```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION
```

```
THE METHODIST HOSPITALS, INC.,      )
                                    )
Plaintiff,                          )
                                    )
vs.                                 )   NO. 2:09-CV-142
                                    )
WOODRUM/AMBULATORY SYSTEMS          )
DEVELOPMENT, LLC,                   )
                                    )
Defendants.                         )
```

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Summary Judgment, filed on February 26, 2010, and Defendant's Cross Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, filed on March 31, 2010. For the reasons set forth below, the Plaintiff's motion for summary judgment is **GRANTED** and Defendant's cross motion for summary judgment is **DENIED.** The Clerk of Court is directed to enter judgment in favor of the Plaintiff, The Methodist Hospital, Inc.

BACKGROUND

On May 7, 2009, The Methodist Hospital, Inc. ("Methodist"), filed a complaint against Woodrum/Ambulatory Systems Development LLC. ("WASD"). The complaint alleges that WASD filed a Demand for Arbitration ("Demand") with the American Arbitration Association ("AAA") naming both Merrillville Surgery Center, LLC ("MSC") and

Methodist. The Demand alleges that both MSC and Methodist improperly terminated a Management Agreement ("Agreement") whereby WASD provided management services for the operation of an ambulatory surgery center ("Surgicenter") to MSC and Methodist. Methodist alleges that it is not a party to the Agreement between MSC and WASD, and that it can not be forced to arbitrate WASD's claims. The complaint seeks a declaratory judgment that Methodist is not a party to the Agreement, and that the Agreement's arbitration provisions are not enforceable against Methodist. Additionally, the complaint sought a stay of arbitration. Methodist sought a temporary restraining order staying the arbitration scheduled for May 18, 2009. The motion was granted by The Honorable Joseph S. Van Bokkelen, and a stay remained in affect until June 15, 2009. The Arbitration proceeded as scheduled as to MSC, and the arbitrator awarded damages to WASD in the amount of $93,086.42. The instant motions for summary judgment were filed, and are now fully briefed and ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corporation. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v.*

*Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

The burden is upon the movant to identify those portions of the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). *See also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).

Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. Where the parties file cross-motions for summary judgment, the Court must consider each motion, but despite the parties' agreement that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002). In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The facts in this case are largely undisputed, although the parties interpret their legal significance quite differently. Methodist is a nonprofit corporation formed and existing under the laws of the State of Indiana. MSC is a limited liability company formed and existing under the laws of the State of Indiana. Methodist and MSC are separate and independent legal entities under Indiana law. MSC was formed in 2001 by Paul J. Stanish, M.D. The Articles of Organization of MSC provide that it will be managed by its members.

In 2004, Methodist became an investor and owner of a membership interest in MSC along with eighteen (18) individual physician investors. Under the Operating Agreement, the authority to manage MSC's affairs rested in a Board of Managers comprised of six individuals, three of whom were selected by Methodist and three of whom were selected by the physician investors. The Board of Managers

had regular meetings to address MSC's affairs and kept minutes of those meetings.

MSC commenced operation of an ambulatory surgery center (the "Surgicenter") in September of 2006. From the beginning, the center operated at a loss. As a result, in May of 2007, MSC entered into a Management Agreement (the "Agreement") with WASD for management of the center. The Agreement was executed on behalf of MSC by Paul Stanish, M.D., as a representative of MSC's Board of Managers. Methodist was neither a party nor a signatory of the Agreement.

As the center continued to operate at a loss, Methodist purchased the interest of the physician investors and became the sole member of MSC in August of 2008. MSC's Operating Agreement was amended when the physician investors' membership units were purchased by Methodist to reduce the size of the Board of Managers to three (3) individuals appointed by the majority member. After the purchase, Ian McFadden of Methodist advised WASD that it had taken control of the Surgicenter. WASD began reporting directly to Ian McFadden and Methodist regarding its responsibilities under the Agreement.

On November 25, 2008, MSC notified WASD in writing that it was terminating the Agreement effective December 31, 2008. The letter terminating the Agreement was on Methodist's letterhead, and is signed by Ian McFadden, Methodist's President, on behalf of Methodist, the Sole Memeber of MSC.

MSC continued to maintain separate bank accounts and maintain separate accounting records of the Surgicenter's operations. MSC continued to provide and bill for the services rendered at the

Surgicenter under MSC's tax I.D. number.  Additionally, the Indiana license to operate the Surgicenter was maintained by MSC until the end of November, 2008.  On December 1, 2008, Methodist purchased the assets of MSC, while assuming none of MSC's liabilities. MSC remains, as an insolvent corporation.

In February 2009, WASD filed a demand for arbitration ("Demand") with the American Arbitration Association, seeking to recover unpaid fees under the Agreement.  The Demand names both MSC and Methodist as respondents.  It alleges that WASD provided management services to MSC and Methodist pursuant to the Agreement, and that the Agreement was improperly terminated, resulting in damages to WASD.  It further alleges that the Agreement contains an arbitration provision providing for arbitration under the AAA's Commercial Arbitration Rules. Methodist objected to the arbitration on the grounds that it was not a party to the Agreement and not bound by the Agreement's arbitration provisions.  The arbitrator, however, denied Methodist's objection and set the matter for hearing on May 18, 2009.

On May 7, 2009, Methodist filed its suit for declaratory judgment and stay of arbitration in the Superior Court of Lake County, Indiana, and also requested that the arbitrator postpone the arbitration hearing.  The arbitrator denied this request, and a motion for a temporary restraining order was filed.  WASD then removed the case to federal court.  Following a hearing on the motion for temporary restraining order, Judge VanBokkelen entered an order preventing the arbitration from proceeding against Methodist for 30 days.  The arbitration proceeded as to MSC only on May 18, 2009.  On June 10,

2009, the arbitrator awarded WASD $75,000 in damages, $3,315.17 in interest, $11,066.00 in attorney's fees, $1,855.25 in costs and $1,850 in arbitration fees, for a total of $93,086.42.

Methodist makes two arguments in its summary judgment motion: (1) that it is not a party to the Agreement and not bound to arbitrate any of WASD's claims regarding the alleged wrongful termination of the Agreement; and (2) that the matter is moot because WASD has already been awarded full relief on its claims under the Agreement. In response, WASD alleges that Methodist should be required to arbitrate under theories of estoppel and piercing the corporate veil, and that this matter is not moot, because despite the arbitrator's award, WASD has been unable to collect on the judgment.

Are WASD's claims against Methodist moot?

This Court begins with Methodist's argument that this dispute is moot because the arbitration proceeded as to MSC, and WASD was awarded full damages on the claims at issue in this case. Methodist's argument ignores some important facts: MSC's assets were transferred to Methodist, and WASD has been unable to collect the damages awarded to it through arbitration. Furthermore, if MSC and Methodist are separate legal entities, then the fact that WASD has reached a resolution of its claim as to MSC does not resolve WASD's claim against Methodist. Under these circumstances, the dispute between WASD and Methodist is not moot.

Can Methodist be forced to arbitrate WASD's dispute under the Agreement?

It is undisputed that Methodist is not a party to the Agreement which contains the arbitration clause. While the general rule is that non-signatories to an arbitration agreement can not be compelled to arbitrate, there are some exceptions to this rule. *See Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). Exceptions to this rule include theories of assumption, agency, estoppel, veil piercing and incorporation by reference. *Id.; Thomson-CSF*, 64 F.3d 773, 776 (2nd Cir. 1995). A corporate relationship alone, such as that of parent-subsidiary, is not enough to bind a non-signatory to an arbitration agreement. *Zurich,* 417 F.3d at 688; *Thomson-CSE.,* 64 F.3d at 777. WASD argues that Methodist is required to arbitrate despite being a non-signatory to the agreement under two theories: estoppel and piercing the corporate veil.

Estoppel

"[A] party may be estopped from asserting that an arbitration clause contained in a particular document is inapplicable when that same party simultaneously claims the direct benefit of that contract." *Gersten v. Intrinsic Technologies, LLP*, 442 F.Supp.2d 573, 579 (N.D. Ill. 2006). The benefit, however, must be direct; attenuated and indirect benefits are insufficient to force arbitration under an estoppel theory. *Zurich*, 417 F.3d at 688. This rule applies to prevent a litigant from unfairly receiving the benefit of a contract while repudiating what it perceives as a disadvantage. *Id.* A plaintiff can not have it both ways. "It cannot rely on the contract

when it works to its advantage, and repudiate it when it works to its disadvantage." *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981).

In *Gersten v. Intrinsic Technologies, LLP*, a non-signatory who had relied upon provisions of an agreement as a basis for its recovery but denied that it was bound by the arbitration provision of the same contract was required to arbitrate. 442 F.Supp.2d at 581. WASD argues that Methodist too sought the benefits of the agreement by invoking its provisions in terminating WASD, but seeks to avoid the arbitration provision in the same agreement. WASD's argument fails because it was not Methodist who directly invoked the agreement at all, but MSC acting through Methodist, MSC's sole member. Methodist received no direct benefit from the contract.

Veil-Piercing

A corporate veil is pierced where there is a unity of ownership between the entities, the separate personalities of the entities no longer exist, and adherence to the corporate form would sanction a fraud or promote injustice. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009); *Smith v. McLeod Distrib., Inc.*, 744 N.E.2d 459 (Ind. Ct. App. 2000). To prevail on a veil-piercing theory, the party seeking to pierce the corporate veil must show evidence of : (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporate shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual

obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Escobedo v. BHM Health Assocs.*, 818 N.E.2d 930, 933 (Ind. 2004); *Aranson v. Price*, 644 N.E.2d 864, 867 (Ind. 19894). Where a party seeks to hold one corporation liable for another corporation's debt, the court may also consider factors such as whether similar corporate names were used, whether the purposes of the corporation were similar, whether the corporations shared common principal officers, directors and employees, or whether the corporations used the same offices, telephone numbers and business cards. *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1192 (Ind. Ct. App. 2002); *Smith v. McLeod Distributing, Inc.,* 744 N.E.2d 459, 462 (Ind. Ct. App. 2000). This is a highly fact-sensitive inquiry; and the burden rests with the party seeking to pierce the corporate veil. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265-66 (7th Cir. 1996); *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994).

WASD relies on the following facts to support its claim that the corporate veil should be pierced. Methodist was the sole member of Merrillville. Methodist admitted to WASD that it controlled MSC. WASD reported directly to Methodist regarding its responsibilities under the agreement. And, Methodist held itself out as one-in-the-same with Merrillville by terminating the Agreement between Merrillville and WASD. WASD further claims that fraud would result from adherence to the corporate form because Methodist, as the sole

member of MSC, purchased all of MSC's assets (including its name) without any of its liabilities, as a way to escape WASD's claim.

At the time the Surgicenter ceased operations, Methodist was the sole member of MSC, but in determining whether it is appropriate to pierce the corporate veil, it is appropriate to consider the history of MSC. MSC was formed in 2001 by Paul J. Stanish, M.D. At that point in time, Methodist has no ownership interest in MSC. At the time Methodist gained an ownership interest in MSC, MSC also had 18 individual physician investors. MSC's board has conducted regular meetings and kept records of these meetings. Furthermore, until the asset sale on December 1, 2008, MSC was operated as a separate facility from Methodist, maintained separate bank accounts, maintained its own license to operate the Surgicenter, and provided and billed for services under its own tax i.d. number.

Although WASD suggests that it reported directly to Methodist regarding responsibilities under the Management Agreement, a more accurate statement would be that WASD reported to a member of MSC's board of managers; namely, Ian McFadden. WASD also relies on its allegation that Methodist terminated the Management Agreement, but that argument fails for the same reason. *MSC* terminated the Agreement, through Methodist, its sole member. The record establishes that Methodist became the sole member of MSC, certain individuals served as both corporate officer of Methodist and as member of the Board of Managers of MSC, and Methodist, through its president, signed the termination letter on behalf of MSC as its sole member. These facts, however, are not sufficient for WASD to sustain its burden of

showing that MSC and Methodist were mere alter egos or instrumentalities of each other.

As for Methodist' argument that any claims of WASD to collect the arbitration award from Methodist under veil-piercing theories must be pursued by the bankruptcy trustee, if at all, as an asset of MSC's bankruptcy estate, that is not an issue squarely before this Court. The issue before this Court is whether Methodist can be forced to arbitrate. Accordingly, this Court declines to rule on this issue.

CONCLUSION

For the reasons set forth below Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross Motion for Summary Judgment is **DENIED.** The Clerk of Court is directed to enter judgment in favor of the Plaintiff, The Methodist Hospital, Inc.

DATED: August 23, 2010  /s/ RUDY LOZANO, Judge
**United States District Court**